### CASSEL, et ux v. TAX ASSESSOR.
No. 68-14300.
Circuit Court, Dade County.
February 5, 1970.

Julian Benjamin of Cassel & Benjamin, Miami, for plaintiffs.

Thomas C. Britton, County Attorney, Stuart Simon, Assistant County Attorney, for defendants.

J. GWYNN PARKER, Circuit Judge.

*Final judgment:* This cause came on to be heard and considered by the court on motion of the plaintiffs for summary judgment. Since both plaintiffs and defendants conceded at the commencement of the hearing that there were no factual issues of consequence in controversy, and since it appears to the court that the only issues involved in this litigation are legal in nature, it is appropriate that the cause be determined in favor of either the plaintiffs or the defendants on summary judgment.

The court had before it and considered the complaint of the plaintiffs, the answer of the defendants, the plaintiffs' motion for summary judgment with two exhibits attached thereto, the affidavit of Paul W. Dausey in opposition to said motion with the assessor's folio card pertaining to the subject property attached thereto, and the affidavit of Dale R. Strothman in opposition to said motion with two exhibits attached thereto. The court also heard and considered the extensive oral argument advanced by adversary counsel.

The evidence placed before the court through the listed pleadings and documents indicates that on January 1, 1968 the plaintiffs were the owners of a residence situated at 410 N. E. 17th Street in the city of Miami. The land, comprising two lots, was assessed for 1968 at $26,620, or $350 per front foot. The very old two story home situated on one of the two lots was valued at only $3,380, and the total 1968 assessment was thus $30,000. A $5,000 homestead exemption was granted to the plaintiffs, so that the total taxable value in 1968 was $25,000. The plaintiffs challenged the 1968 assessment placed on their property, and in particular the land value of $26,620 ($350 per front foot, or 2.56 per square foot) as excessive.

The property involved in the cause and subjected to the 1968 assessment challenged herein was a residence built more than 40 years ago. It is in fairly close proximity to the Jordan Marsh store which runs along Biscayne Boulevard between N. E. 15th Street and N. E. 16th Street. The subject property faces N. E. 17th Street between Biscayne Boulevard and Bay Shore Drive, and is thus a block distant from Jordan Marsh. Save and except for certain commercial properties fronting on Biscayne Boulevard between N. E. 16th Street and N. E. 17th Street, the property comprising the square block bounded by N. E. 16th Street, N. E. 17th Street, Biscayne Boulevard, and Bay Shore Drive is devoted to commercial parking. The plaintiffs' homesite is to all intents and purposes an ancient residence surrounded by commercial parking area servicing Jordan Marsh and the other commercial properties fronting on Biscayne Boulevard.

The county tax assessor valued the land on which the Jordan Marsh store is located at $5.50 a square foot. This value was placed on all the land bounded by N. E. 15th Street, N. E. 16th Street, Biscayne Boulevard and North Bay Shore Drive. The lots on the north side of N. E. 16th Street were valued at $3 per square foot, except for the property on the corner of Biscayne Boulevard to which a higher value was ascribed. The Assessor valued all lots on the south side of N. E. 17th Street, which included the plaintiffs' two lots, at $350 a front foot, or $2.56 per square foot, save and except for those which were valued at a higher rate because of their frontages on Biscayne Boulevard or North Bay Shore Drive.

The plaintiffs would not quarrel with the valuation placed on their two lots if these lots were actually commercial parking lots. They point out however that their land is not commercial parking area, but a homesite. They argue that it should be assessed on the basis of its actual use as a homesite rather than on the basis of its highest and best use as commercial property. In short, they contend that they are taxed on a commercial basis and in such manner that they will in all probability be forced to sell their home which has had a continuously lessening value as a homesite over the years.

Although the plaintiffs' position has much to commend it, the court must nonetheless reject it and enter summary judgment in favor of the defendant taxing officials. In reaching this conclusion, the court was influenced and persuaded by the following considerations —

1. Walter v. Schuler, (S.Ct., 1965) 176 So.2d 81, makes clear that property must be assessed at "just valuation," a term synonymous with fair market value. The latter term is defined in the opinion as "the amount a purchaser willing but not obliged to buy,

would pay to one willing but not obliged to sell." The Supreme Court makes clear that the criteria or guideposts for ascertaining value prescribed for assessors to consider in §193.021, Florida Statutes, are merely aids to be used in arriving at fair market value, which is specifically defined in the above manner in the opinion.

It appears to the court that, were the plaintiffs' property to be sold in a transaction involving a willing buyer and a willing seller, it would be sold at a price that contemplated utilization of the property for commercial purposes. A potential purchaser who offered to buy the property as though there were a covenant running with the land which restricted the use of the property to residential purposes only for a period of time would speedily have his offer rejected by the owner/seller. The fair market value of the property does not contemplate such a hypothetical restrictive covenant where none in fact exists. Yet the plaintiffs' position is that the property should be valued as though there were such a restrictive covenant encumbering the land's use. A seller of such property would not accept an offer based on such a hypothetical restrictive covenant, and the assessor should not value the property on this basis. He is mandated to fair market value, and its ascertainment must be his fundamental concern under the law.

2. Generally speaking, land value should be based on the highest and best legal use of the property. A reduction in the total property value because of an under-utilization of the property should be reflected in a lower building or improvement assessment. This would appear to have been done in the instant case where the venerable two story residence situated on one of the lots was valued at only $3,380.

That all land valuation should be based on highest and best legal use rather than on actual use is given support by §193.201, Florida Statutes, more commonly referred to as the agricultural zoning law. This statute and its predecessor, the "green belt statute," make clear that a special statute must be enacted requiring that certain types of land be assessed on the basis of actual use before valuation based on "highest and best use" is discarded as the criterion and replaced by valuation based on actual use.

3. The constitution of Florida requires the defendant taxing officials to assess properties with equality and uniformity. In the instant case the defendants have assessed the plaintiffs' lands equally, uniformly, and in a consistent pattern with the surrounding lands. Were they to make a special exception of the plaintiffs' lands based on use, they would not be performing their organic duty.

4. The plaintiffs have received the benefit of homestead excemption as granted them by the constitution and statutes of Florida. This was the only special and particular benefit that was intended to be conferred on Florida resident homeowners. The plaintiffs are seeking the additional benefit through this case of having their homestead assessed more advantageously than surrounding property. Absent a constitutional or statutory provision, there is no basis for such additional entitlement or benefit to homeowners.

5. The affidavit of Paul W. Dausey indicates that the plaintiffs have not been discriminated against in any way or singled out for unfavorable treatment. Absent a use restriction, lands used for residences in the county are assessed in the same way as adjacent properties, even though those adjacent properties may be used for profitable or commercial purposes.

Summary judgment is hereby granted in favor of the defendants.